IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ethel D. Ackah, | ) |
|    Plaintiff, | ) C.A. No. 6:07-2796-HFF-WMC |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| Greenville County School District | ) |
|    Defendant. | ) |

This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The *pro se* plaintiff alleges that her former employer, the Greenville County School District ("GCSD"), discriminated against her because of her race and age in violation of Title VII of the Civil Rights Act of 1964, as amended; Title 42, United States Code, Section 1981; and the Age Discrimination in Employment Act ("ADEA"). She further alleges a violation of Due Process and a claim for "Neglect of Duty."

Pursuant to the Provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## **FACTS PRESENTED**

The plaintiff, a black female, was hired to teach English just prior to the 2004-05 school year by Dr. Randy Reagan, the principal of Woodmont High School in the GCSD. Dr. Reagan interviewed the plaintiff and had exclusive authority in the hiring decision. Dr.

Reagan gave plaintiff an annual contract. South Carolina law stipulates that annual contract teachers must undergo a formal evaluation process in their first year. S.C. Code Ann. § 59-26-40 (2007). GCSD uses the ADEPT/PAS-T evaluation system. *Id*.

Sarah Gullick, the District's ADEPT teacher leader, Tammy Greer, the assistant principal at Woodmont, and Rebecca Gault comprised the plaintiff's initial evaluation team. At the end of her first year, they completed a formal evaluation of the plaintiff. The results indicated that the plaintiff did not pass this evaluation. She received "unsatisfactory" ratings on three of the eight criteria and "needs improvement" for an additional four measures. Gullick aff. ¶¶ 3-6, ex. A. The plaintiff concedes that at this point the GCSD could have terminated her employment. Pl. dep. 35. However, Dr. Reagan exercised the discretion enumerated in S.C. Code Ann. § 59-26-40 to offer the plaintiff a second annual contract.

The plaintiff's contract for a second year included a diagnostic assistance plan designed to improve her performance. Reagan aff. ¶ 8. The diagnostic assistance team consisted of Ms. Greer, Ms. Gullick, and Ashley Jenkins, Woodmont High School's curriculum resource teacher. Jenkins aff. ¶ 2. Also, Kim Whitmire, an experienced English teacher, was assigned to mentor the plaintiff. Whitmire aff. ¶ 3. Despite these efforts, the team decided that the plaintiff's performance was not improving and that she was not implementing strategies for improvement. Greer aff. ¶ 5; Gullick aff. ¶ 6-7; Jenkins aff. ¶¶ 4-5; Whitmire aff. ¶ 5. The plaintiff continued to struggle with the same deficiencies observed during her first annual contract year. Jenkins aff. ¶¶ 4-5; Gullick aff. ¶¶ 6-7; Greer aff. ¶ 5-6; Whitmire aff. ¶ 5. In addition, administrators received complaints about the plaintiff's treatment of students, her grading practices, and her judgment in discussing a parent conference in front of another student. Greer aff. ¶ 5; Reagan aff. ¶ 10, ex. C. Further, the plaintiff's diagnostic assistance team uniformly believed that she was reluctant

to apply any corrective actions and suggestions of the team and was instead entrenched in her belief that she had taught previously and did not need to modify, improve, or develop new teaching skills or techniques. Gullick aff. ¶ 6; Greer aff. ¶ 6; Reagan aff. ¶ 10.

In recognition of the plaintiff's lack of progress, Dr. Reagan did not recommend her for another contract the following year. By letter dated March 30, 2006, Dr. Reagan formally informed the plaintiff of his decision. The letter noted several recurring issues: parents being upset about the plaintiff's treatment of their child in her class, including unfair grading practices; disparaging remarks made by the plaintiff to her students; unprofessional behavior, such as discussing with another teacher the details of a parent conference in the presence of an unrelated student, and the plaintiff's reluctance to accept and apply corrections. The letter stated that based upon the above issues and her failure to follow the improvement plan, he was recommending that her contract not be renewed. On April 7, 2006, the District Superintendent, Dr. Phinnize J. Fisher, notified the plaintiff that she was accepting Dr. Reagan's recommendation to terminate her employment and further notified the plaintiff that she had the right to request a hearing and contest the decision. In that letter, Dr. Fisher stated that the basis for the decision was the plaintiff's lack of instructional planning and failure to implement strategies as recommended in PAS-T assistance plan; inappropriate and disparaging remarks to students in class; and lack of professionalism by engaging in discussion of a parent conference in the presence of an unrelated student. Reagan aff. ¶¶ 11, 12, ex. C, D.

The plaintiff requested a hearing. This hearing took place on May 4, 2006, before Pat Mitchell, the GCSD's Executive Director of Human Resources. The plaintiff, Dr. Reagan, Ms. Greer, Patty Fox, the GCSD's Coordinator of Evaluation, and Henry Melton, the GCSD's employee relations representative, attended the hearing. Mitchell aff. ¶¶ 3-4, ex. A.

As part of the hearing, Mr. Mitchell heard from Dr. Reagan on behalf of the administration. Mitchell aff. ¶ 5. The plaintiff also presented her side of the story in person. *Id.* The hearing lasted approximately 55 minutes to an hour, during which time the plaintiff did not call witnesses or present documents. Pl. dep. 67; Mitchell aff. ¶ 8. As part of his review, Mr. Mitchell also reviewed the plaintiff's 2004-05 Final Evaluation, the 2005-06 improvement plan, Dr. Reagan's letter of March 30, and the plaintiff's response to Dr. Reagan dated April 6, 2006. Mitchell aff. ¶ 5, ex. A.

GCSD contends that the plaintiff did not ask for more time to present her side at the hearing. Mitchell aff. ¶ 8. The plaintiff contends that she asked for a second hearing in order to combat certain evidence against her that the defendant allegedly first introduced at this hearing. Pl. resp. m.s.j. p. 3. The evidence that plaintiff claims was first introduced at the hearing includes: (1) the allegations that she claimed not to need teaching help; (2) the existence of a cell phone recording of one of her classes; and (3) the fact that she discussed a parent teacher conference in the presence of an unrelated student[1]. Pl. resp. m.s.j. p. 3. However, it is undisputed that plaintiff had notice before the hearing of the negative evaluation of her teaching style, treatment of students, grading practices, and inability or reluctance to apply suggestions. Pl. resp. m.s.j. p. 3; Gullick aff. ¶ 6; Greer aff. ¶ 5; Reagan aff. ¶ 10.

Mr. Mitchell recommended that the decision not to employ the plaintiff be upheld, and Dr. Fisher accepted his recommendation, informing the plaintiff of that decision by letter dated May 10, 2006. Mitchell aff. ¶ 6, ex. B. The plaintiff then appealed Dr. Fisher's decision in writing to the District's Board of Trustees. Mitchell aff., Ex. C. The Board

---

[1] Notably, the plaintiff's discussion regarding a parent conference in the presence of an unrelated student was enumerated by Dr. Fisher as one of the bases for the decision to not offer the plaintiff a contract in the letter dated April 7, 2006. Reagan aff., ex. D.

4

reviewed the plaintiff's appeal and Mr. Mitchell's findings and decided not to hear her grievance. Mitchell aff. ¶ 6.  The plaintiff was informed of that decision by letter dated May 24, 2006, from the Board Chair. Mitchell aff, ex. D.

The plaintiff then filed a race discrimination charge with the South Carolina Human Affairs Commission ("SHAC").  Ackah dep., ex. 14.  The plaintiff's charge did not claim or allege any other type of discrimination, and neither the Equal Employment Opportunity Commission ("EEOC") nor SHAC ever investigated any other type of discrimination.  The plaintiff later filed this suit alleging race and age discrimination, and on January 22, 2008, she amended her complaint to allege age discrimination, violation of her right to Due Process, and neglect of duty.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1)there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id*. at 257.  In determining whether a genuine issue has been

raised, the court must construe all inferences and ambiguities against the non movant and in favor of the non moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* At 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's positions is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at trial on the merits.

**ANALYSIS**

*Race and Age Discrimination*

The plaintiff's original complaint alleged race and age discrimination. On January 22, 2008, the plaintiff filed an amended complaint. The amended complaint did not include any racial discrimination allegations. As such, the defendant argues that the plaintiff has abandoned her race claim. The plaintiff argues that she did not abandon the race claim; she simply wanted to focus "on the most urgent points of the case. Pl. resp. m.s.j. 3. For purposes of this motion, this court will assume the plaintiff has not abandoned the race claim and will consider the claim on the merits.

The plaintiff's race and age discrimination claims fail on the merits. A Section 1981 claim is substantively analyzed in the same manner as a Title VII race discrimination claim. *White v. BFI Waste Serv.*, 375 F.3d 288, 295 (4th Cir. 2004). Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), the allocation of proof is as follows: (1) the plaintiff must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate a legitimate non discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas Corp v. Percy Green*, 411 U.S. 792, 802-03 (1973)). In order to make a *prima facie* case of unlawful discrimination, the plaintiff must establish that (1) she is a member of a protected class; (2) an adverse employment action was taken against her; (3) other employees who are not members of the protected class engaged in similar or comparable conduct; and (4) the adverse employment action taken against her was more

severe than the action taken with regard to such similarly situated employees. *See Moore v. City of Charlotte*, 754 F.3d 1100, 1105-06 (4th Cir. 1985).

Here, the plaintiff has come forward with no evidence supporting her discrimination claims. She has no evidence of other similarly situated individuals accumulating comparable teaching records and retaining employment. Thus, without making further allegations, she cannot make a *prima facie* case and thus cannot succeed on a race or age claim. Furthermore, the GCSD has articulated legitimate non-discriminatory reasons for terminating the plaintiff's employment. She received unacceptable scores on her thorough evaluations, and she failed to improve her performance in accordance with the improvement plan. Reagan aff. ¶ 10, ex. C; Greer aff. ¶¶ 5-6. The plaintiff has presented no evidence upon which a factfinder could find that the GCSD's non-discriminatory reasons for her dismissal were pretext for unlawful discrimination. For the foregoing reasons, summary judgment should be granted on these claims.

### *Violation of Due Process*

The plaintiff alleges that the GCSD violated her rights to Due Process. Here, even assuming for purposes of this motion that the plaintiff had a property or liberty interest in continued employment with the GCSD, the claim fails because she received all the process that was due. The Supreme Court in *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 546 (1985) explained that the process due a tenured public employee requires: "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Curtis v. Montgomery County Public Schools*, 242 Fed.Appx. 109, 111 (2007) (quoting *Loudermill*, 470 U.S. at 546). The South Carolina Court of Appeals has further explained that Due Process does not necessarily require notice of all the charges against a teacher, but rather merely notice of enough

charges to justify termination. *Hilliard v. Orangeburg County School District Number Three*, 386 S.E.2d 628, 629-30 (S.C. Ct. App. 1989). In *Hilliard*, 386 S.E.2d 628, plaintiff Benjamin Hilliard was employed by the school district for 11 years. *Id*. at 629. As a welding instructor, Hilliard's contract required him, *inter alia*, to be personally responsible for supervising the students, and to be with them at all times. *Id*. He was notified by letter of two specific violations of this part of his contract. *Id*. He complained that other grounds for dismissal were introduced for the first time at the hearing, and he could not adequately respond to these new grounds. *Id*. However, the appellate court asked only if there was "substantial evidence to support the findings of violations of which Hilliard had notice." *Id*. at 630. The court found that substantial evidence did support the violations of which Hilliard had notice, and thus his Due Process claim failed. *Id*.

As noted, under the South Carolina Teachers Employment and Dismissal Act, annual contract teachers like the plaintiff have no future contractual expectations. *See* S.C. Code Ann. § 59-26-40(F, G). However, the statute provides for an informal hearing if a School District chooses not to re-employ an annual contract teacher following completion of the contract year. The parameters set forth for the conduct of this hearing are that the teacher may provide "information, testimony, and witnesses that the teacher considers necessary," that the superintendent review the evidence, and that the superintendent issue a decision within various timeframes that the plaintiff does not challenge. S.C. Code Ann. § 59-26-40(H). The superintendent's decision is appealable to the Board of Trustees, which has discretion to grant a hearing and is required to notify the teacher of its decision, which is final. *See id.*

The plaintiff was given a hearing at which she was permitted to present her case as she saw fit. Pl. dep. 62-87. She received a decision from the superintendent and the school board affirming the decision not to re-employ her. Mitchell aff. ¶ 6. The plaintiff,

like the plaintiff in *Hilliard*, claims that several allegations against her were introduced for the first time at the hearing. However, it is clear that she had notice of a number of the allegations, including her unacceptable teaching evaluation and inability or reluctance to apply suggestions, prior to the hearing. Pl. res. m.s.j. p. 3; Gullick aff. ¶ 6; Greer aff. ¶ 6; Reagan aff. ¶ 10. At the hearing, the plaintiff received her entitled opportunity to refute these allegations. These allegations collectively constitute enough to justify termination. In fact, under S.C. Code Ann. § 59-26-40(G)[2], they require termination. As such, even if the plaintiff could demonstrate deprivation of a property or liberty interest worthy of Constitutional protection, she received all the constitutional process that was due - notice of the charges against her, an explanation of the employer's evidence, and the opportunity to present her side of the story. Based upon the foregoing, summary judgement should be granted on the Due Process claim.

### *Neglect of Duty*

The plaintiff alleges a claim for "Neglect of Duty" against the defendant. Presumably, the plaintiff is alleging that the GCSD failed to properly evaluate her employment. The plaintiff has failed to show a duty of the GCSD that was breached. Further, she has not alleged or shown a breach of contract, wrongful termination in violation of public policy, or any other legal theory upon which she could recover. Accordingly, summary judgment should be granted on this claim.

---

[2]The statue provides in pertinent part: "An annual contract teacher who has not completed successfully the formal evaluation process or the professional growth plan for the second time must not be employed as a classroom teacher in a public school in this State for a minimum of two years. . . ." S.C. Code Ann. § 59-26-40(G).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendant's motion for summary judgment (doc. 94) be granted.

                                                 s/William M. Catoe
                                                 United States Magistrate Judge

August 4, 2008

Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).